**IN THE COURT OF APPEALS OF IOWA**

No. 18-1216
Filed November 21, 2018

**IN THE INTEREST OF E.R.,**
**Minor Child,**

**M.K., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Plymouth County, Julie Schumacher,

Judge.

     A mother appeals the order modifying the dispositional order in a child-in-

need-of-assistance proceeding.  **AFFIRMED.**

     John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant mother.

     Rosalynd J. Koob of Heidman Law Firm, P.L.L.C., Sioux City, for appellee

father.

     Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

     Meret Thali of Juvenile Law Center, Sioux City, for minor child.

     Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

A mother appeals the order modifying the dispositional order entered after her child was adjudicated to be a child in need of assistance (CINA) to transfer legal custody of the child to the Iowa Department of Human Services (DHS) for placement of the child with a relative or foster family. She contends the juvenile court erred in denying her motion to dismiss the CINA action, in transferring legal custody of the child, and in placing certain terms and conditions on her.

**I. Background Facts and Proceedings.**

The parents of the child at issue were married when the child was born in 2004.[1] The DHS first had contact with the family in 2006 after an altercation between the parents led to the father's arrest for domestic assault and child endangerment. The 2007 decree dissolving the parents' marriage granted them joint legal custody and shared physical care of the child. As described by the juvenile court, the parents' relationship following the divorce was "extremely contentious" and remained so. A 2011 order modified the dissolution decree to grant the mother physical care of the child. The DHS continued to have contact with the family in the years that followed.

The State filed a CINA petition in December 2013. The juvenile court adjudicated the child to be a CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2013) (defining a CINA as a child who "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian or other member of the household in which the child resides to exercise

---

[1] They have one other child who is not involved in these proceedings.

a reasonable degree of care in supervising the child"). The mother appealed and this court reversed the adjudication. *In re E.R.*, No. 14-0850, 2014 WL 4937999, at *1 (Iowa Ct. App. Oct. 1, 2014). This court concluded the mother's conduct did not fall within the purview of section 232.2(6)(c)(2). Id. at *4. But, this court had "no doubt these children are in need of assistance" and that "adequate protection for these children can be found in a plain reading of section 232.2(6)(c)(1), because both children have sustained mental injury at the hands of both parents." *Id.* at *4. The State then filed another CINA petition concerning the child on October 17, 2014. In March 2015, the juvenile court entered an order adjudicating the child to be a CINA pursuant to Iowa Code section 232.2(6)(c)(1) (2014) (defining a CINA as a child who "has suffered or is imminently likely to suffer harmful effects as a result of . . . [m]ental injury caused by the acts of the child's parent, guardian, or custodian"). The court entered a dispositional order in April 2015, which found the least restrictive placement available was for the child to remain with the mother under the supervision of the DHS. *See* Iowa Code § 232.101(1). The order set forth terms and conditions for both the parents and child, which included the child's attendance at individual counseling. The court continued the CINA adjudication and the child's placement with the mother following each subsequent dispositional-review hearing. It also denied the State's 2016 motion to modify the dispositional order and the mother's 2017 motion to dismiss the CINA case and terminate the dispositional order.

In January 2018, the mother again moved to dismiss the CINA case. The father moved to modify the dispositional order in March 2018. The court held a hearing on the motions in March 2018. On April 20, 2018, before the court had

ruled on the motions, the mother filed another motion to dismiss the case pursuant to Iowa Code section 232.101(2) on the basis that more than three years had elapsed since the entry of the initial dispositional order. Another hearing was held in May 2018. In July 2018, the juvenile court overruled the mother's motions to dismiss and it transferred legal custody of the child to the DHS for placement with a relative or in foster care. It is from this order that the mother appeals.

**II. Scope and Standard of Review.**

We review CINA proceedings de novo. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). We give weight to the juvenile court's factual findings, though they are not binding on us. *See id.* Our fundamental concern is the child's best interests. *See id.*

**III. Discussion.**

This appeal concerns the modification of a dispositional order following a CINA adjudication. Chapter 232 requires the juvenile court to hold a dispositional hearing "as soon as practicable" after adjudicating a child to be a CINA. Iowa Code § 232.99(1). The court must then make the "least restrictive disposition appropriate considering all the circumstances of the case" from the three options available. *Id.* § 232.99(4); *In re J.R.H.*, 358 N.W.2d 311, 319 (Iowa 1984). The least restrictive option is to suspend judgment and continue the proceedings subject to terms and conditions the court imposes to assure the proper care and protection of the child. *See* Iowa Code §§ 232.99(4), 232.100. If this option is not appropriate, the next least restrictive option is to enter an order permitting the child's parent at the time of the filing of the petition to retain custody of the child. *See id.* §§ 232.99(4), 232.101(1). The final option is to transfer legal custody to

one of the alternate placements listed in section 232.102(1). *See id.* §§ 232.99(4), 232.102(1).

The juvenile court ordered the child to remain with the mother in its initial dispositional order. The mother alleges the juvenile court erred in denying her motion to dismiss the case and in transferring legal custody of the child to the DHS for alternative placement. She also challenges the terms and conditions of the order.

### A. Denial of the motion to dismiss.

The mother contends the juvenile court erred in denying her motion to dismiss the case based on section 232.101(2). That section states:

> The duration of any period of supervision or other terms or conditions shall be for an initial period of no more than twelve months and the court, at the expiration of that period, upon a hearing and for good cause shown, may make not more than two successive extensions of such supervision or other terms or conditions of up to twelve months each.

Iowa Code § 232.101(2). Because the juvenile court entered the first dispositional order on April 17, 2015, the mother argues the period of supervision could not extend beyond April 17, 2018. The juvenile court denied the mother's motion to dismiss because the hearing on which the court based its ruling occurred before the three-year period had expired. On appeal, the mother argues that nothing in section 232.101 states that a hearing tolls the three-year deadline.

The juvenile court may terminate or modify a dispositional order "[a]t any time prior to expiration." *Id.* § 232.103(1). A child's parents are among those persons authorized to file a motion to terminate or modify a dispositional order. *See id.* § 232.103(2)(b). Unless waived, the juvenile court must hold a hearing on

a motion to terminate or modify a dispositional order. *See id.* § 232.103(3). Section 232.103(4) sets forth the circumstances under which the court may modify or terminate a dispositional order.

The mother moved to dismiss the case and terminate the dispositional order in January 2018. The father moved to modify it in March 2018. The juvenile court was required to hold a hearing on their motions, which it did in March 2018—prior to the expiration of the three-year period. The mother filed another motion to dismiss in April 2018. Another hearing was held in May 2018. Although the court ruled on the motions in July 2018, more than three years after the dispositional order's initial entry, it did not continue the dispositional order beyond the limits of section 232.101(2). Instead, the court found good cause to modify the most recent dispositional order because the efforts made to effect the purposes of the order had been unsuccessful and other options were not available. *See id.* § 232.103(4)(c). At no time did the juvenile court extend the dispositional order beyond the period allowed by section 232.101(2).

Even assuming the statutory limit for disposition under section 232.101 had passed, the remedy the mother seeks—dismissal of the CINA action—is unwarranted. Nothing in the plain language of section 232.101 requires the court dismiss a CINA action after three years, and to read such a requirement into the statute would run counter to the purpose of chapter 232. The legislature has stated that chapter 232 "shall be liberally construed to the end that each child under the jurisdiction of the court shall receive . . . the care, guidance and control that will best serve the child's welfare and the best interest of the state." *Id.* § 232.1. As we have often said, "Our paramount concern is the child's welfare and best

interests." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). To dismiss a CINA adjudication if the purposes of the dispositional order have not been successful after three years and the child remains in need would be contrary to the child's welfare and best interests. Rather, from our reading of section 232.101, it seems clear that the legislature has afforded parents a limited time—a period of not more than three years—to make the improvements necessary to assure the child's safety and welfare. Once that period has passed, so has the legislature's patience with the parent. *Cf. In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (recognizing that although the law requires a "'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232" (citation omitted)); *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting the legislature determines the interval for which patience for parents may last). When a parent fails to make the necessary improvements within three years, the remedy is not to leave the child in the unsupervised care of that parent; it is to explore other options to ensure the child's safety and welfare. *See R.J.*, 436 N.W.2d at 636 (noting that patience with parents must be reasonably limited because it "can quickly translate into intolerable hardship for the [child]"). That is what the court did in this case.

We affirm the denial of the mother's motion to terminate.

**B. Transfer of legal custody.**

The mother next contends the court erred in transferring legal custody of the child to the DHS. In order to modify, vacate, substitute, or terminate a dispositional order, the court must find one of the following circumstances exists:

a. The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.

b. The purposes of the order cannot reasonably be accomplished.

c. The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.

d. The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4). The mother challenges the existence of the grounds for modification of the dispositional order.

The juvenile court found modification was appropriate because the efforts made to effect the purposes of the dispositional order had been unsuccessful and other options to effect the purposes of the order are not available. *See* Iowa Code § 232.103(4)(c). Specifically, the court found:

The very same issues present at the onset of this case remain, some more exacerbated. The mother in this case has been unable or unwilling to follow court orders that were specific for the benefit of [the child]'s mental health. She has verbally attacked the service providers in this case and threatened them. She is unable to accept responsibility for her actions, and instead deflects blame on others involved in the case. As present at the onset of the case, she has repeatedly failed to consistently attend therapy and failed to ensure that [the child] consistently attends therapy. She has served as a barrier to visitation with the father, and while the Court finds that the visitation issue alone would not necessarily meet the burden necessary to modify custody in a [CINA] case under these facts, such in an additional aggravating factor to [the child]'s mental health and overall well-being. While she may present to her therapist as cooperative, that is not reflected outside of the therapy walls. Reasonable efforts have been made to avoid this out of home placement including but not limited to individual evaluations and therapy for both parents and the child, professional team staffings, visitation, FSRP services, and supervision provided by the [DHS]. To date, those efforts have been unsuccessful.

The record supports these findings. Clear and convincing evidence establishes the grounds for modification pursuant to section 232.103(4)(c).

The mother also challenges the transfer of legal custody based on the juvenile court's finding that it is contrary to the child's best interests to remain in her care. Although the juvenile court should permit the child to remain at home with the child's parent "[w]henever possible," the court may transfer legal custody from the parent if clear and convincing evidence shows that remaining with the parent will subject the child to physical abuse or if remaining with the parent will subject the child to some harm that would justify a CINA adjudication and an adequate placement is available. *Id.* § 232.102(6)(a).

The juvenile court found that it would be contrary to the child's welfare to remain with the mother because the child cannot be protected from some harm that would justify a CINA adjudication under the grounds set forth in the adjudication order—the child has suffered or is imminently likely to suffer harmful effects as a result of mental injury caused by the acts of the child's parent. *See* Iowa Code § 232.2(6)(c)(1). The term "harmful effects" is not defined in chapter 232, but our supreme court has noted that it relates to the physical, mental, or social welfare of a child. *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). Accordingly, harmful effects occur "when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 41-42. A "mental injury" is "a nonorganic injury to a child's intellectual or psychological capacity as evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, considering the child's cultural origin." Iowa Code § 232.2(35).

Clear and convincing evidence shows that the child is likely to suffer harmful effects as a result of a mental injury if the child remains in the mother's care.

Despite the terms of the dispositional order requiring both the mother and the child to attend individual therapy, she failed to attend her own therapy appointments or to ensure the child's attendance at therapy. As the juvenile court noted, the mother "has been unable or unwilling to follow court orders that were specific for the benefit of [the child]'s mental health."

Because the grounds for modification and transfer of legal custody were proved by clear and convincing evidence, we affirm the modification of the dispositional order transferring legal custody of the child to the DHS.

## C. Terms and conditions.

Finally, the mother challenges certain terms and conditions imposed in the dispositional order. Specifically, she argues the juvenile court erred in restricting the therapists from whom she and the child receive treatment by requiring new providers be approved by the therapy team. She also argues the juvenile court erred in requiring that she attend weekly counseling sessions with a therapist.

We find the mother's arguments unavailing. Iowa Code section 232.106 provides that the dispositional order may impose terms and conditions on the child's parent if the purpose of the terms and conditions is to assure protection of the child. Additionally, "the State, as parens patriae, has the duty to assure that every child within its borders receives proper care and treatment, [and] it must intercede when parents abdicate that responsibility." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We affirm the terms and conditions imposed in the dispositional order.

**AFFIRMED.**